HEARD NOVEMBER TERM, 1874.

## CHANDLER *vs.* GERATY.

Where a plantation, consisting, in part, of high land, and, in part, of marsh land, and having a valuable place for business, was sold for a gross sum, and described as containing 1,200 acres, more or less, and in a bond given for two-thirds of the purchase money, it was stipulated that the bond is "subject to an apportionment, if, on a survey, there proves a deficiency of the land," and it afterwards, by actual survey, appeared that the plantation contained less than 500 acres: *Held*, in an action on the bond, that it was error to instruct the jury to make the apportionment by a mere arithmetical calculation, based on the number of acres and the price, and to reduce the contract price in the ratio of the diminution of quantity, according to the actual measurement, without regard to the character and value of the land as to which the failure had accrued.

BEFORE GRAHAM, J., AT CHARLESTON, DECEMBER TERM, 1873.

Action by A. C. Chandler against Wm. C. Geraty, Daniel H. Towles and Francis W. Towles.

The plaintiff sued on a bond executed and delivered to him by the defendant on the first day of January, 1872, and conditioned for the payment of $3,333.33, in three equal annual instalments, with interest thereon at ten per cent. per annum, payable annually, until the whole amount of principal and interest shall be fully paid.

The plaintiff filed his complaint April 26, 1873, demanding judgment against the defendants for the first instalment, payable on said bond, January 1, 1873, to wit, the sum of $1,144.44, with interest thereon at ten per cent. per annum, from January 1, 1873.

On the 23d of May, 1873, the defendants answered, alleging that on the 1st day of January, 1872, the plaintiff, in consideration of $5,000, sold and conveyed to the defendants, as tenants in common, "all that plantation or tract of land situate, lying and being on Wadmalaw Island, in the County of Charleston, and State aforesaid, and known as the Point of Pines, or Martin's Point, containing twelve hundred acres, more or less, butting and bounding north and west on Wadmalaw Sound, east on lands of R. E. Jenkins, and south on lands of Benjamin Bailey."

That the deed of conveyance contained a clause of general warranty, in the usual words, and was duly recorded. That the cash portion of the purchase money, to wit, $1,666 $^{66}/_{100}$, was paid by the defendants to the plaintiff, and that, for the credit portion of the purchase money, the defendants executed and delivered to the plaintiff their bond, described in the complaint, and which bond con-

tained, as a part of the condition, these words : " This bond subject to an apportionment, if, on a survey, there proves a deficiency of the land for purchase of which this bond is given." That on January 1, 1873, the defendants were ready to pay the first instalment of their bond, but that the plaintiff had neglected or delayed to have a survey made, although requested so to do by the defendants.

That, some time thereafter, Wm. Hume, surveyor, made a survey and plat of said lands, and on said plat certified : " Plat of a tract of land known as Martin's Point, situated on Wadmalaw Island, Charleston County, State of South Carolina, containing 189 acres of highland, and $257\,^{75}/_{100}$ acres of marsh land—total $446\,^{75}/_{100}$ acres."

That, from the survey, there appeared a deficiency of more than one-half of the quantity of land sold and conveyed by the plaintiff to the defendants, and warranted.

The defendants then offered to the plaintiff to deduct one thousand dollars from the whole amount of the purchase money, and estimated, at such, to pay the instalment which should, upon such estimate, appear to be due.

This offer of defendants, made " in a desire to avoid litigation," was rejected by plaintiff, and the defendants then prayed that the deficiency in the quantity of the land might be estimated by a jury, and claimed costs.

All the facts above narrated were either proved or admitted at the trial.

The evidence tended to show that there was a wharf, store and steamboat landing at Martin's Point, which made it a valuable place, and that the rest of the plantation was worth very little, and that the marsh land, especially, was of very little, if any, value.

His Honor Judge Graham charged the jury as follows :

" *Gentlemen of the Jury*—I shall instruct you to ' hold these parties to the bond and the deed.' You are to decide this case according to the ' bond and the deed.' The deed conveys twelve hundred acres of land ; the bond says ' if, upon a survey, there prove to be a deficiency, there shall be an apportionment ;' you are to make that apportionment. If you should conclude to apportion ' the land according to the deficiency,' your problem would be this : If you pay $5,000 for 1,200 acres of land, how much would you pay for 446 ? If that be your calculation, then you must find for the defendants, because they have already overpaid the portion that is due—they

have paid $1,666, when the agreement was to pay one-third cash, the balance in one and two years. You cannot find for the defendants so much money, because they have paid their money, and cannot claim it back.

" In case you conclude that the value of the Bluff is something greater than the rest of the land, you must regulate that according to the testimony, and what was meant by that clause in the bond 'if, upon a survey, there proves to be a deficiency of land, there shall be an apportionment.'"

Here plaintiff's counsel asked that the jury be instructed, in making the apportionment, to discriminate between the value of the different lands. This was refused, and exception taken to such refusal.

The jury found for the defendants.

A motion for a new trial was made and overruled, and the plaintiff appealed.

*Campbell & Whaley*, for appellant.

*DeSaussure & Son, Mitchell*, contra.

Feb. 26, 1875. The opinion of the Court was delivered by

WILLARD, A. J. This case is distinguishable from the class of cases that have received so much consideration in the Courts of this State on the question of the right of a purchaser to rescind, wholly or in part, the contract of purchase, when there has been a material failure in value, as it regards the quanity or quality of the property sold, as in the present case the bond for the purchase money of the land sold contained a clause designed to cover the very case made by the defendants. The clause in question is as follows: "this bond, subject to an apportionment, if, on a survey, there proves a deficiency of the land for purchase of which this bond is given."

It is clear that a Court of Equity could take jurisdiction of the specific enforcement of this contract to the extent of making such apportionment on just and equitable principles. The defendant's answer was such as to entitle him to claim the interposition of the equitable powers of the Court, where the most complete relief would result from the application of the principles and rules of equity.

The question then remains to be considered whether the rule of

apportionment submitted by the Court to the jury was conformable to the rules of equity. It clearly was not.

The contract of sale was for a tract of land of an assumed number of acres, valued at a gross sum. The required number of acres failed. The tract consisted, in part, of land fitted for cultivation, and, in part, of land unfit for that use. The tract was sold as a " plantation," and, of course, fitness for culture was a chief element of value. The rule of apportionment, as laid down by the Court, omitted the consideration of the two descriptions of land embraced in this tract. It submitted to the jury a mere arithmetical calculation, based on the number of acres and the price called for by the deed, and required the reduction of the contract price in the ratio of the diminution of quantity, according to actual measurement, without regard to the character of the land as to which the failure had occurred, whether of the class of the most valuable or of the least valuable land.

No illustration is required to make clear the practical defect of the rule applied by the Court. It certainly is not justified by the terms of the contract which the Court was called upon to enforce. The object and intent of that contract was to conform the sum paid to the actual value of the property sold, taking for the elements of that value the gross price agreed upon, the total quantity of land in acres assumed at the making of the contract, and the relative quantities of the two kinds of land assumed at that time.

A new trial should be ordered.

*Moses,* C. J., and *Wright,* A. J., concurred.